# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kristian Pedersen,<br>Russell Mullen,<br>Jennifer Alves,<br>    Plaintiffs,<br><br>v.<br><br>Chemed Corporation,<br>Roto-Rooter Services Company,<br>Roto-Rooter Group, Inc.,<br>NUROTOCO OF<br>MASSACHUSETTS, INC.<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  10-CV-<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

The Plaintiffs in this action are plumbers licensed by the Massachusetts Board of State Examiners of Plumbers and Gas Fitters. The Plaintiffs were also employees of Defendant, NUROTOCO OF MASSACHUSETTS, Inc.; a division of Roto-Rooter Services Company and a subsidiary of Chemed Corporation located at 2500 Chemed Center, 225 East Fifth Street, Cincinnati, OH 45202 (Collectively hereinafter referred to as "Roto-Rooter" or the "Company"). The principal place of business of NUROTOCO OF MASSACHUSETTS, Inc., is 175 Maple Street, Stoughton, Massachusetts.

Generally, the Plaintiffs bring claims against the Defendant for knowing and purposeful violations of Massachusetts' laws and regulations, which caused direct harm to Plaintiffs. Plaintiffs relied on the promises of the Defendant to their detriment. In addition, Plaintiffs are owed for monies under, *inter alia*, claims for breach of implied contract, breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and quantum meruit; Plaintiffs also have claims for intentional interference with contractual relations, fraud and

deceipt, civil conspiracy, intentional and negligent misrepresentation, intentional infliction of emotional distress, and wrongful termination.

## STATEMENT OF JURISDICTION

This court has diversity-of-citizenship jurisdiction over these claims pursuant to 28 U.S.C. § 1332.  The Plaintiffs are citizens of Massachusetts.  The Defendant, NUROTOCO OF MASSACHUSETTS, Inc. is a division of Roto-Rooter Services Company and a subsidiary of Chemed Corporation, organized under the laws of Delaware and with its principal place of business in Ohio.  The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

## PARTIES

1. The Plaintiff, Kristian Pedersen ("Mr. Pedersen"), was an employee of NUROTOCO OF MASSACHUSETTS, Inc., and currently resides at 46 Montello Street, Middleboro, Massachusetts.

2. The Plaintiff, Russell Mullen ("Mr. Mullen"), was an employee of NUROTOCO OF MASSACHUSETTS, Inc., and currently resides at Whitman, Massachusetts.

3. The Plaintiff, Jennifer Alves ("Ms. Alves"), was an employee of NUROTOCO OF MASSACHUSETTS, Inc., and currently resides at 9 Tobey Lane, Mattapoisett, Massachusetts.

4. The Defendant, Chemed Corporation, is a Delaware Corporation with its principal place of business at 2600 Chemed Center, 255 E. Fifth Street, Cincinnati, Ohio.  At all relevant times, Chemed was the parent company of Roto-Rooter Services Company.

5. The Defendant, Roto-Rooter Services Company, is a wholly owned subsidiary of Defendant Chemed Corporation and its principal place of business is located at 2600 Chemed Center, 255 E. Fifth Street, Cincinnati, Ohio. At all relevant times, Roto-Rooter was the parent company of NUROTOCO OF MASSACHUSETTS, Inc.

6. The Defendant, Roto-Rooter Group, Inc. is a wholly owned subsidiary of Defendant Chemed Corporation and its principal place of business is located at 2500 Chemed Center, 255 E. Fifth Street, Cincinnati, Ohio. At all relevant times, Chemed was the parent company of Roto-Rooter Group, Inc.

7. The Defendant, NUROTOCO OF MASSACHUSETTS, Inc., ("Roto-Rooter" or sometimes the "Company") is a Massachusetts Corporation located at 175 Maple Street, Stoughton, Massachusetts. At all relevant times, NUROTOCO OF MASSACHUSETTS, Inc. was affiliated with and controlled by Roto-Rooter Services Company.

## FACTS RELEVANT TO ALL CLAIMS

8. Plaintiffs were, at all times relevant, plumbers licensed in and by the State of Massachusetts.

9. At all times relevant, Defendant was the Plaintiffs' employer.

10. Upon being hired as a plumber to work for the Company, each Plaintiff was separately and individually told that if each made an investment which consisted of the purchase of a white utility van, displayed the Roto-Rooter Logo and used his/her own plumbing equipment, each would each have annual earnings in excess of $100,000.00.

11. The investment to each Plaintiff totaled approximately $55,000.00.

12. Each Plaintiff did privately purchase a van and displayed the Roto-Rooter logo on said van.

13. Each Plaintiff entered into a compensation and non-compete agreement with the Company whereby, he/she agreed to do plumbing work exclusively for Roto-Rooter.

14. The compensation paid to each plumber was calculated on a commission based structure.

15. In addition to licensed plumbers, the Company employs drain cleaners and plumbing apprentices who are not licensed to do plumbing work without the direct supervision of a licensed plumber. According to the Massachusetts Code, a licensed plumber must be within arms distance of the apprentice doing plumbing work. *See*, M.G.L. c. 142 § 3(a); *see also*, 248 CMR 3.03 (1)(a).

16. The Company knowingly and purposefully sent out and continues to send out unlicensed apprentices to plumbing work without the accompaniment of a licensed plumber. By doing so, the Company knowingly and purposefully violates the Massachusetts laws and regulations.

17. Customer service calls are routed, exclusively, to the Company's central call center. The dispatchers do not assign plumbing calls to licensed plumbers; instead, apprentices are sent to the job first, thereby depriving the licensed plumbers of work that they are available for.

18. The Plaintiffs have been called on the phone by the apprentices to answer questions or give instructions on how to solve plumbing problems on the job.

19.  Plaintiffs have on several occasions, been sent out to correct and fix plumbing jobs that apprentices have not completed properly.

20.  The Roto-Rooter Call Center has been given specific instructions to assign plumbing jobs to apprentices without the supervision of a licensed plumber. This conduct is in direct violation of the regulations of the Massachusetts Board of Examiners of Plumbers and Gas Fitters[1] and Massachusetts laws governing the supervision of apprentices.[2]

21.  The Defendants have committed consumer fraud and placed the health and safety of the general public at grave risk through their established pattern and practice of sending unqualified and unlicensed apprentices to the homes and businesses of unsuspecting customers across Massachusetts without the required supervision of a licensed plumber.

22.  The Plaintiffs in this action are also Plaintiffs in a federal wage and hour class action suit against the Defendant filed in early 2010 in the United States District Court for the Eastern District of New York.[3]

23.  After the Plaintiffs signed on to a wage and hour class action suit against the Defendant, the Defendant retaliated against the Plaintiffs by further reducing assignments and work hours and eventually by wrongfully terminating the Plaintiffs.

---

[1] 248 CMR 3.03 (1)(a): "No person shall engage in the business of a master plumber or gas fitter or work as a journeyman plumber or journey gas fitter … unless he is lawfully licensed by the Board as provided in 248 CMR 3.00."

[2] M.G.L. c. 142 § 3(a): "A person may be employed as an apprentice gas fitter by a master gas fitter only. Such apprentices shall work under the direct supervision of a master plumber or a journeyman plumber or a master or a journeyman gas fitter."

[3] *See*, Anthony Morangelli and Frank Ercole, individually and behalf of all others similarly situated v. Chemed Corporation and Roto-Rooter Services Company; Docket No.CIV 10-0876(BMC).

24. Plaintiffs were directly told that they would have to "work for free" in order to get work from the Company. This work might come as a result of giving "free" estimates to potential customers and converting those estimates to actual jobs.

25. The Defendants claim that the Plaintiffs had performance issues based their calculations on the conversion rates of "free estimates."

26. During Plaintiff Pedersen's employment, Plaintiff sustained an injury while on a Roto-Rooter job.

27. Upon reporting the injury to the Company, Plaintiff's Supervisor, Jerry Dilks prohibited Mr. Pedersen from filing an injury claim after he was hurt on the job in violation of the Massachusetts Worker's Compensation Laws.[4]

28. Supervisor, Jerry Dilks from Roto-Rooter threatened Mr. Pedersen with termination if he filed an injury complaint.

29. Plaintiff Alves injured her eye on the on a Company assigned job. Although she was allowed to file an injury complaint, she was required to report to the office the following day, against her doctor's orders and was subsequently sent out for drug tests. Ms. Alves was never compensated for her time for the Company required tests.

*According to Massachusetts Worker's Compensation Laws, an employee who receives a personal injury in the course of his employment that incapacitates the employee from earning full wages for a period of five or more calendar days is entitled to the employer filing an injury*

---

[4] M.G.L. c. 152, § 6.

*claim "within seven calendar days, not including Sundays and legal holidays, of receipt of notice." See M.G.L. c. 152 § 6. In addition to Roto-Rooter's failure to file a complaint, the company's use of verbal threats in connection to my client's employment is an area of our concern.*

30. Although it is understood that employees are responsible for the upkeep and maintenance of their vans, when Plaintiff Mullen requested assistance while his truck was in need of repair, the Company put him on an "approved leave of absence" which he did not request, instead of offering him other work as the Company had previously done for other employees with similar issues.

31. The Plaintiffs were constructively discharged when the Defendant withheld work from them and assigned plumbing work to unqualified plumbing apprentices.

32. The Defendants wrongfully accused Plaintiffs of doing "side jobs" while withholding plumbing work from them.

33. The Defendants wrongfully accused Plaintiffs of contract violations and unfair competition after constructively discharging them.

## COUNT I - BREACH OF IMPLIED CONTRACT

34. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

35. Defendants materially breached compensation agreements with the Plaintiffs, including any implied contract by: failing to assign plumbing jobs and pay in accordance with the terms and conditions of the compensation and non-compete agreement; and failing to comply with Massachusetts laws and regulations when assigning plumbing jobs to

apprentices. Defendants took these actions and failed to act without any good or just cause.

36. Defendants' breaches were material.

37. As a result of Defendants' material breaches, Plaintiffs suffered substantial damages, including but not limited to loss of compensation and capital investments, damage to reputation, consequential damages, severe emotional distress, legal fees and expenses.

## COUNT II - VIOLATION OF GOOD FAITH AND FAIR DEALING

38. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

39. Defendants breached and violated the covenant of good faith and fair dealing inherent in every contract and arising therefrom as a result of Defendants' actions and inactions.

40. As a result of Defendants' breach and violation, Plaintiffs suffered substantial damages, including but not limited to loss of compensation and capital investments, damage to reputation, consequential damages, severe emotional distress, legal fees and expenses.

## COUNT III - BREACH OF IMPLIED CONTRACT/ PROMISSORY ESTOPPEL

41. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

42. Defendants materially breached promises made to Plaintiffs, including any implied contract, by failing to fulfill the contractual promises; by failing to assign plumbing jobs in accordance with the terms and conditions of the compensation and non-compete agreement; and by failing to comply with Massachusetts laws and regulations when assigning plumbing jobs to apprentices, all without any good or just cause.

43. Defendants' promises were such that it was reasonable and expected that Plaintiffs would act upon them.

44. The promises did induce Plaintiffs to act upon them, and to continue to work exclusively for Defendants.

45. Plaintiffs reasonably relied upon the promises.

46. Defendants failed to fulfill the promises and, as a result, injustice can be avoided only by enforcement of the promises. Among the injustices to result without enforcement of the promises are that Plaintiffs may have no recovery for monies due them and for the suffering experienced without enforcement of the promises.

47. As a result of Defendants' failure to fulfill the promises, Plaintiffs have suffered substantial damages, including but not limited to loss of compensation and capital investments, damage to reputation, consequential damages, severe emotional distress, and legal fees and expenses.

## COUNT IV - UNJUST ENRICHMENT

48. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

49. All Defendants have been unjustly enriched by diverting work that should have been directed to the Plaintiffs, as licensed tradesmen, to unlicensed apprentices, for their own benefit and without compensation to the Plaintiffs.

50. All Defendants will be continue to be unjustly enriched if they are permitted to continue to direct work intended for licensed tradesmen to unlicensed apprentices while billing customers at the rate for licensed tradesmen yet paying reduced apprentice wages for the purpose of increasing Defendants' profits.

### COUNT V - QUANTUM MERUIT

51. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

52. Defendants promised to direct work assignments for licensed tradesmen received at their call centers to the Plaintiffs.  Despite Defendants promises and the Plaintiffs' availability to accept said assignments, Defendants diverted assignments to unlicensed tradesmen.

53. The Plaintiffs expected assignments and they are owed the reasonable amount for their investments and the work that they were denied by the Defendants but were available to perform, *quantum meruit.*

### COUNT VI - RETALIATION AND WRONGFUL TERMINATION
### IN VIOLATION OF PUBLIC POLICY

54. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

55. Plaintiff, Kristian Pedersen was hired by the Defendant Company on or about February 2005.  Plaintiff, Jennifer Alves was hired by the Defendant Company on or about June 16, 2008.  Plaintiff, Russell Mullen was hired by the Defendant Company on or about October 8, 2008.

56. The Plaintiffs joined a federal class action suit[5] on or about May 2010. Shortly thereafter, the Defendants consistently diverted work assignments that should have been assigned to the Plaintiffs; to other employees. The Defendants later terminated each Plaintiff.

57. The Plaintiffs were retaliated against for joining the federal class action suit against the Defendant.

58. Plaintiffs' damages are the direct and proximate result of Defendant's retaliatory actions in terminating each for exercising a legally protected right.

59. As a result of Defendants actions, Plaintiffs have suffered loss of income and capital investments, damage to reputation, consequential damages, severe emotional distress, legal fees and expenses.

## COUNT VII - CONSTRUCTIVE DISCHARGE

60. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

61. Plaintiffs were hired by the Defendant on or about the dates as follows:  Mr. Pedersen February 2001, Ms. Alves in mid 2008, and Mr. Mullen, October 8, 2008.

62. During the course of Plaintiffs' employment, the Defendant on numerous occasions diverted work opportunities away from the Plaintiffs to unlicensed tradesmen.

63. Through the systematic efforts of the Defendants agents and employees, and with the approval and instruction of the Defendants, the Defendants constructively discharged the

---

[5] Anthony Morangelli and Frank Ercole, individually and behalf of all others similarly situated v. Chemed Corporation and Roto-Rooter Services Company, Docket No.CIV 10-0876(BMC).

Plaintiffs when the Defendants intentionally diverted work opportunities to others and through the retaliatory actions of the Defendants.

64. Plaintiffs' damages are the direct and proximate result of Defendants unlawful actions in the workplace.

65. As a result of said actions of the Defendants, Plaintiffs have suffered loss of income and capital investments, damage to reputation, consequential damages, severe emotional distress, legal fees and expenses.

### COUNT VIII - INTENTIONAL INTERFERENCE WITH CONTRACTUAL BUSINESS RELATIONS

66. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

67. A contractual relationship and beneficial business relationship existed between the Defendants and Plaintiffs. The Defendants represented they would assign jobs with third parties to the Plaintiffs from which there was a reasonable expectancy of financial benefit to the Plaintiffs.

68. The Defendants intended to breach their relationship with the Plaintiffs when they diverted assignments and jobs with third parties to unlicensed tradesmen in order to drive business away from the Plaintiffs.

69. The actions and conduct of the Defendants inducing third parties to contract with unlicensed tradesmen, in violation of the contract, were improper in motive and means.

70. As a direct and proximate result of the Defendants improper interference with the Plaintiffs prospective business relationships with third parties, the Plaintiffs suffered

substantial damages, including but not limited to loss of compensation and capital investments, loss of benefits, loss of future benefits, consequential damages and damage to reputation, severe emotional distress and legal expenses.

## COUNT IX - FRAUD AND DECEIT

71. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

72. The Defendants' scheme of diverting work assignments, intended for the Plaintiffs as licensed tradesmen, to unlicensed tradesmen, and then billing customers at higher rates prescribed for licensed tradesmen but actually paying the reduced apprentice wages, constituted fraud and deceit.

73. The Defendants engaged in this fraudulent scheme knowingly and intentionally, and for purposes of depriving Plaintiffs of work and increasing the Defendants' profits.

74. As a consequence of the Defendants' fraudulent and deceitful conduct, the Plaintiffs were deprived of work of substantial value and the Defendants have been, and may continue to be, unjustly enriched.

## COUNT X - INTENTIONAL AND NEGLIGENT MISREPRESENTATION

75. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

76. Defendants made false statements of material fact, or omitted to state material facts in violation of their duty to Plaintiffs, all with the intent that Plaintiffs thereupon rely, and that others be misled. The false statements or omissions included:

    a. The statements, assurances and agreements set forth with specificity in Paragraphs 1 through 74 above; and

    b. Defendants' promise to Plaintiffs that work would be assigned and directed to them as licensed tradesmen and in compliance with Massachusetts laws and regulations governing the trade.

77. Plaintiffs did rely upon Defendants' false statements to their detriment.

78. The false statements were:

    a. made as to facts susceptible of actual knowledge, with knowledge of their untruth, or with reckless disregard as to their truth;

    b. promissory in nature, but made with a present intent not to comply therewith;

    c. promissory in nature and involved predictions as to future events, but were made by parties with superior bargaining power as to matters of which said parties should have had superior knowledge;

    d. the knowing utterance of half-truths which were, in effect, whole lies; and/or

    e. made in breach of defendants' duty to exercise due care in order to reasonably determine that the statements made were true and accurate at the time they were made.

79. As a result of Defendants' fraudulent and intentional misrepresentations, Plaintiffs suffered substantial damages, including but not limited to loss of compensation and capital investments, loss of benefits, loss of future benefits, consequential damages and

damage to reputation, severe emotional distress and legal expenses.

## COUNT XI – CIVIL CONSPIRACY

80. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

81. Upon information and belief, the individual Defendants, and others, unnamed at this time, together as a group, and at times between more than one of them, did conspire to harm Plaintiffs, as set forth herein. Upon information and belief, the power of the individual Defendants as a group was greater than the power of any one of them acting alone would have been. As a direct and proximate result of the individual Defendant's unlawful conspiracy, Plaintiffs suffered substantial damages, including but not limited to harm to reputation, loss of wages and commissions, loss of benefits, loss of future benefits, consequential damages and severe emotional distress and legal fees and expenses.

## COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. The Plaintiffs repeat and incorporate by reference the allegations set forth above.

83. Defendants' actions that harmed Plaintiffs, as set forth herein, were wholly without privilege and utterly repugnant to civilized persons and outrageous and harmful to Plaintiffs.

84. Defendants' actions, upon information and belief, were intentional.

85. As a result, Plaintiffs suffered severe emotional distress, with physical manifestations and have been substantially harmed.

86. As a result of the Defendants' wrongful acts including this intentional infliction of emotional distress, Plaintiffs suffered substantial damages, including but not limited to harm to reputation, loss of compensation, loss of benefits, loss of future benefits, consequential damages and severe emotional distress and legal fees and expenses.

WHEREFORE, the Plaintiffs respectfully pray that the Court grant the following relief:

(a) Temporarily restraining, and preliminarily and permanently enjoining the Defendants from assigning work, intended for licensed tradesmen, to unlicensed tradesmen;

(b) Ordering, preliminarily and finally, a full restitution of all lost wages, commissions and other compensation to the Plaintiffs;

(c) Ordering, preliminarily and finally, a full restitution of all expenses born by the Plaintiffs and as required by the Defendants in the execution of their business relationship;

(d) Ordering the Defendants to account for all gains, profits and advantages derived from the conduct complained of herein, and entering judgment in favor of the Plaintiffs and against the Defendants in such amount;

(e) Awarding Plaintiffs damages from all Defendants, together with interest and costs, on each count;

(f) Awarding Plaintiffs their costs and expenses of this action, including reasonable allowance for counsel fees, expert fees, and other costs and disbursements;

(g) Awarding an order and judgment in Plaintiffs favor on the claims in the Complaint; and

(h) Awarding Plaintiffs such other and further relief as is just and proper.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
For the Plaintiffs,
By their Attorneys,

/s/ Lisa S. Carlson
Lisa S. Carlson
BBO # 668824
lisa@massbaylaw.com

/s/ Lisa M. Holland
Lisa M. Holland
BBO # 673109
207 Bedford Street, Suite 11
Lakeville, MA 02347
lholland@massbaylaw.com
Date:  October 20, 2010           (888) 333-5133