UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kristian Pederson, Russell Mullen, Jennifer Alves,    )<br>                                                                      )<br>            Plaintiffs,                                          )<br>                                                                      )<br>v.                                                                  )<br>                                                                      )<br>Chemed Corporation, Roto-Rooter Services )<br>Company, Roto-Rooter Group, Inc.,          )<br>NUROTOCO OF MASSACHUSETTS, INC.  )<br>                                                                      )<br>            Defendants.                                      )<br>                                                                      ) | No. 1:10-CV-11804-GAO |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY COMPEL ARBITRATION AND STAY THIS ACTION

Defendants, Chemed Corporation ("Chemed"), Roto-Rooter Services Company ("RR Services"), Roto-Rooter Group, Inc. ("RR Group") and NUROTOCO OF MASSACHUSETTS ("Nurotoco") (together "Roto-Rooter") file this Memorandum in Support of their Motion to Dismiss or Alternatively Compel Arbitration and Stay this Action.

### Facts

Nurotoco is a Massachusetts Corporation. The Plaintiffs, Kristian Pedersen, Russell Mullen and Jennifer Alves, are all former employees of Nurotoco. Kristian Pederson was terminated after admitting he operated a business in competition with Nurotoco, in direct violation of his employment policies. Jennifer Alves was terminated for repeated violations of the Nurotoco timekeeping policies. Russell Mullen resigned. Even before leaving Nurotoco, the Plaintiffs were unhappy with Nurotoco and joined in a class action lawsuit against Roto-Rooter (the "NY Lawsuit," a copy of which is attached hereto as Exhibit 1) concerning wage issues. After that, they then hired another attorney, their counsel in this action, to attempt to extort a

multi-million dollar payment by threatening to bring claims to the Massachusetts State Board of Examiners of Plumbers and Gas fitters (the "Plumbing Board") against Roto-Rooter. When Roto-Rooter refused any payment to Plaintiffs, their attorney filed a complaint with the Plumbing Board (the "Plumbing Board Complaint," a copy of which is attached hereto as Exhibit 2) which is still pending. Plaintiffs now have filed this, their third, action (the "Complaint") seeking redress of a number of alleged concerns.

This Court cannot and should not address any of the allegations. First and foremost, this Court does not have jurisdiction over this case. Plaintiffs allege subject matter jurisdiction is premised upon diversity, yet complete diversity does not exist. Plaintiffs are all residents of Massachusetts, as they admit in Paragraphs 1-3 of the Complaint, and their former employer, Nurotoco, is a Massachusetts Corporation, as Plaintiffs admit in Paragraph 7 of the Complaint. Those allegations alone are sufficient to dismiss this Complaint.

Second, even if this Court were entitled to address the merits of the case, it still should not, as all three Plaintiffs individually signed a valid and enforceable "Dispute Resolution Agreement" requiring all disputes to be adjudicated in arbitration (together the "Arbitration Agreements," copies of which are attached as Exhibit 3.) The Arbitration Agreements state that each Plaintiff agrees to "settle any and all claims, disputes or controversies arising out of or relating in any way to [their] application for employment, employment and/or cessation of employment exclusively by final and binding arbitration before the American Arbitration Association…" Plaintiffs' claims all arise out of their employment at Nurotoco and thus this Court should stay the action and compel arbitration.

Finally, if this Court finds that it has jurisdiction over the case, or even over certain claims in the Complaint, it still should dismiss the Complaint. Plaintiffs' claims are premised

upon alleged violation of Massachusetts statutes and regulations which Plaintiffs do not have standing to raise. Furthermore, even if Plaintiffs had standing, they have already raised these same issues before the Plumbing Board and have not waited for any response from the Plumbing Board, thus, the claims are premature, as they have failed to exhaust administrative remedies. Finally, Plaintiffs' claims relate to wage issues that are currently pending before another jurisdiction as part of the NY Lawsuit and this Court should use its discretion to dismiss or stay the Complaint on account of the parallel proceeding.

## Argument

### I. The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) Because There Is Not a Federal Question Involved in the Complaint, Nor Is There Complete Diversity Between Plaintiffs and Defendants

The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because there is no federal question involved in the Complaint, nor is there complete diversity between Plaintiffs and Defendants. Plaintiffs have not pled any federal question. The only way in which this Court would have subject matter jurisdiction is if diversity of citizenship existed. 28 U.S.C. §1332(a) states that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000…and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." The burden of proof is on Plaintiffs to prove that diversity exists. *One Communs. Corp. v. Sprint Nextel Corp.*, 495 F. Supp. 2d 219, 222 (D. Mass. 2007).

For corporate parties, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. §1332(c)(1). The U.S. Supreme Court recently clarified that for diversity purposes, a company's "principal place of business," as stated in 28 U.S.C.S. § 1332(c)(1), refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (U.S. 2010).

In this case, it is clear that complete diversity does not exist. Plaintiffs admit in Paragraphs 1-3 of the Complaint that they are residents of Massachusetts and former employees of Nurotoco. Plaintiffs then admit in Paragraph 7 of the Complaint that "Defendant, NUROTOCO OF MASSACHUSETTS, Inc....is a Massachusetts Corporation located at 175 Maple Street, Stoughton, Massachusetts" and in the last sentence of the opening paragraph of the Complaint state that "The principal place of business of NUROTOCO OF MASSACHUSETTS, Inc., is 175 Maple Street, Stoughton, Massachusetts." Nurotoco has been a Massachusetts corporation since its organization in 1984 and has been doing work in Massachusetts since that time. The thrust of the Complaint turns on actions taken by Nurotoco in Massachusetts which Plaintiffs allege violate Massachusetts laws and regulations. Plaintiffs have not met their burden of proof that complete diversity exists. Consequently, this Court must dismiss this action as it does not have subject matter jurisdiction.

## II.   This Court Should Stay This Action And Compel Arbitration As The Plaintiffs Entered Into Valid And Enforceable Arbitration Agreements With Roto-Rooter

If the court rejects the above premise, then it still must stay this action and compel arbitration as the Plaintiffs entered into valid and enforceable arbitration agreements with Roto-Rooter. Both Federal and Massachusetts statutes encourage and accept valid arbitration agreements. In the federal context, 9 U.S.C. §3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The U.S. Supreme Court has repeatedly held that the existence of arbitration agreements in employment is sufficient grounds for compelling arbitration when a relevant dispute arises. In *Circuit City Stores, Inc. v. Adams*, the court noted: "We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context," 532 U.S. 105, 123 (2001). These advantages, the Court noted, are many and include the avoidance of litigation costs. *Id.* In agreeing to arbitrate a statutory claim, the Supreme Court has noted, "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985).

Massachusetts General Laws similarly codify the favoring of arbitration over litigation when an applicable agreement exists. M.G.L. c. 251 §1 states that "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable, save upon grounds as exist at law or in equity for the revocation of any contract." M.G.L. c. 251, §2 provides Massachusetts courts the power to compel arbitration and stay any actions commenced where an arbitration agreement exists. *See Ross v. Health and Retirement Trust*, 46 Mass. App. Ct. 82, 85-87 (1998).

In this case, each Plaintiff signed a "Dispute Resolution Agreement," (Exhibit 3) in which they agreed to settle "any and all claims, disputes, or controversies arising out of or relating in any way to [their] application for employment, employment and/or cessation of employment exclusively by final and binding arbitration before the American Arbitration Association under its Employment Dispute Resolution Rules." All of Plaintiffs' claims directly relate to their "application for employment, employment and/or cessation of employment."

Specifically, Plaintiffs, at-will employees, allege that Roto-Rooter: (1) breached employment agreements with Plaintiffs; (2) violated the covenant of good faith and fair dealing contained within employment agreements with Plaintiffs; (3) breached implied employment agreements with Plaintiffs; (4) was unjustly enriched by diverting employment from Plaintiffs; (5) owe Plaintiffs for diverting employment assignments from Plaintiffs; (6) wrongfully terminated Plaintiffs from employment; (7) constructively discharged Plaintiffs from employment; (8) interfered with employment agreements with Plaintiffs; (9) committed fraud inducing Plaintiffs to enter into employment agreements; (10) misrepresented facts to induce Plaintiffs to enter into employment agreements; (11) committed a civil conspiracy to cause Plaintiffs to lose monies in their employment; and (12) inflicted emotional distress by diverting employment assignments away from Plaintiffs. By the terms of the Arbitration Agreements, these claims must all be adjudicated before an arbitration panel and not this Court.

### III. The Complaint Should Be Dismissed As Plaintiffs Have No Standing, The Claims Are Premature and The Claims Are Currently Pending Before Another Court

The Complaint should also be dismissed as the Plaintiffs have no standing, the claims are premature and the claims are currently pending before another court.

A.  <u>The Complaint Should be Dismissed as Plaintiffs Have no Standing</u>

The Complaint should be dismissed as Plaintiffs have no standing. M.G.L. c 142, §3(a), which Plaintiffs cite in paragraph 15 of the Complaint as part of the basis for their Complaint, was enacted to promote public safety by regulating the licensure of plumbers, thereby ensuring that consumers receive service from qualified providers.  It is not designed to protect the income and commission levels of individual plumbers.  Similarly, 248 CMR 3 et. seq, which is also referenced in the Complaint, was enacted to give individuals and organizations an opportunity to file a complaint against a Licensee or Apprentice.  That regulation does not authorize citizens to commence private litigation concerning alleged violations of the plumbing code.  In order to file a complaint pursuant to M.G.L. c. 142, §3(a), or any statutory regulation designed to protect the public, a party must have individually been harmed.  *See Warth v. Seldin*, 422 U.S. 490, 499 (U.S. 1975).  When the "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Id.*

In this case, Plaintiffs' entire Complaint is based upon an allegation that Roto-Rooter's business model violates Massachusetts law.  Plaintiffs were not individually harmed by those business practices, in fact, they were employees of Roto-Rooter who received various job assignments from the company and profited from doing that work.  Their grievances with Roto-Rooter are essentially about their termination and job assignments, not about losses they suffered by Roto-Rooter's alleged business practices.  They are not the customers of Roto-Rooter, who, were they individually harmed by an alleged wrongful business practice, might be entitled to bring suit.  They have no such individual harm and as such are merely asserting a generalized grievance shared by a large class of citizens (other than them), and therefore their claims do not

warrant the exercise of jurisdiction. Put another way, since Plaintiffs are not the parties which the statute aims to protect, the Complaint must be dismissed.

> B. The Complaint Should be Dismissed as Plaintiffs Have Not Exhausted their Administrative Remedies

The Complaint should be dismissed as Plaintiffs have not exhausted their administrative remedies. The "exhaustion doctrine holds that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997), *citing Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). *See also Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F.3d 21, 29 (1st Cir. 1995) and *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1099 (1st Cir. 1989).

This Complaint is based in part upon allegations contained within 248 CMR 3 et. seq. 248 CMR 3.07 sets forth the complaint handling process for alleged violations of the code by licensees and apprentices and requires, complaints be submitted to the Plumbing Board for a decision. Plaintiffs began this process by filing the Plumbing Board Complaint (Exhibit 2), but have not completed it as no decision has yet been rendered. In particular, 248 CMR 3.07(6) states: "If...the Board or its duly authorized agent determines that there is reason to believe that the alleged acts occurred and constitute a violation for that a Licensee or Apprentice may be sanctioned by the Board, the duly authorized agent or the Board may issue an order to show cause or offer to resolve the complaint by consent agreement or otherwise informally resolve the matter." If the Plumbing Board were to issue an adverse decision as a result of the Plumbing Board Complaint, pursuant to M.G.L. c. 142, §13, "[a]ny person aggrieved by [that decision]…may appeal to the examiners in writing within ten days after such ruling; and…said examiners shall hear and decide such appeal." At the conclusion of this appeal, "such decision

shall be final and binding upon, and complied with by, all parties in interest." Any complaint filed with any court before the Plumbing Board has made a decision is not only premature, it is inappropriate considering the statutory guidelines governing such actions. Even if Plaintiffs had a right to bring any complaint based upon violation of the Plumbing Code, those claims would be premature as Plaintiffs have not yet had any determination as to their Plumbing Board Complaint or any appeal of that decision. Thus, this Court should dismiss the Complaint as Plaintiffs have failed to exhaust their administrative remedies.

      C.  <u>The Complaint Should be Dismissed or Stayed Due to a Parallel Proceeding Currently Pending Before a New York Court</u>

The Complaint should be dismissed or stayed due to a parallel proceeding currently before a New York court. *See* Exhibit 1. In *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), the Supreme Court "established a narrow basis for the stay or dismissal of federal lawsuits in deference to parallel state proceedings. The Court held that, in certain 'exceptional' circumstances…a federal court could decline jurisdiction based on 'considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'"" *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d. 529, 532 (1st Cir. 1991) (internal citations omitted).

> The Court in *Colorado River* set out four illustrative factors to be considered in determining whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. In *Moses H. Cone* [460 U.S. 1, 14-15 (1983)], the Court added two additional elements: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Another factor considered by some courts is the vexatious or reactive nature of the federal lawsuit. *Villa Marina Yacht Sales, Inc.* at 532.

Plaintiffs here have filed claims in two separate jurisdictions both seeking redress of employment issues seeking compensation for wrongful employment activity. The NY Lawsuit

alleges, among other claims, that Roto-Rooter unfairly denied compensation to Plaintiffs, as a result of company payment policies. The present Complaint also alleges that Roto-Rooter and Nurotoco unfairly denied compensation to Plaintiffs, this time as a result of improperly assigning jobs to employees. Application of the *Colorado River* doctrine makes clear that this Court can dismiss the current action. It is clear Plaintiffs intentionally brought their claims piecemeal so as to force Nurotoco and Roto-Rooter to hire separate counsel to defend each action, thereby raising legal expenses. Additionally, the piecemeal litigation provides Plaintiffs more than one opportunity to collect damages. Second, this Complaint should be dismissed as the NY Lawsuit was filed first. Third, this Complaint should be dismissed due to the vexatious and reactive nature of the lawsuit. Plaintiffs only commenced this current action after they were unable to extort a settlement from Roto-Rooter. Accordingly, as promised in their initial threatening letters and despite the pending NY Lawsuit, Plaintiffs commenced two additional complaints by filing claims before the Plumbing Board and this Court. This Court should not allow Plaintiffs' abuse of the courts and should dismiss, or at least stay, the current Complaint. To the extent that this Court finds that certain of the claims are not directly addressed by the NY Complaint, this Court should dismiss or stay all claims covered by the NY Complaint.

## **Conclusion**

For the foregoing reasons, the Court should either dismiss the Complaint in its entirety for lack of jurisdiction; compel arbitration and stay this action; or dismiss the claims by finding Plaintiffs have no standing, have filed the Complaint prematurely or already have a parallel proceeding filed in another jurisdiction.

Respectfully submitted,

**ROTO-ROOTER**,
by its attorneys,

/s/  Scott T. Buckley
Scott T. Buckley  (BBO #660271)
John J. Weltman (BBO #554085)
The Weltman Law Group
200 High Street
Boston, MA 02210
Telephone: (617) 439-9600
Facsimile:  (617) 439-9990
sbuckley@weltmanlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 15, 2010.

/s/ Scott T. Buckley

J:\WPFILES\CHEMED\Roto Rooter Fed Complaint\Memo Supporting Motion to Dismiss or Compel Arbitration 11.15.10 Final.docx